WESTCHESTER FIRE INSURANCE COMPANY et al., Appellants,

v.

Fannie Blake ENGLISH et al., Appellees.

No. 5550.

Court of Civil Appeals of Texas, Waco.

Oct. 21, 1976.

Rehearings Denied Nov. 24, 1976.

Hilton H. Howell, Naman, Howell, Smith & Chase, Waco, for appellants.

John R. Gladney, Corsicana, Ken W. Fuqua and Leland Reinhard, Wilson, Berry, Jorgenson & Fuqua, Dallas, for appellees.

HALL, Justice.

Posing as husband and wife when in fact they were not married, Reaves Elden Hickey and Mrs. Carolyn Meadows purchased a frame house and two lots located in Frost, Texas, from Mrs. Fannie Blake English, on February 12, 1974, for $8,000.00. Mrs. English conveyed the house and lots by warranty deed, and the grantees are shown to be "R. E. Hickey and wife, Carolyn Hickey." The consideration was $600.00 cash and a vendor's lien note in the principal sum of $7,400.00, payable with interest in 180 monthly installments of $66.52 each, beginning April 1, 1974. The note was secured by a deed of trust on the property which listed Mrs. English as the beneficiary. The note and deed of trust were executed by Hickey and Mrs. Meadows as, "R. E. Hickey and wife, Carolyn Hickey." These instruments were executed in the presence of, and notarized by, Kenneth Logan, a notary public in Frost. Logan is also an agent for the appellant, Westchester Fire Insurance Company. At the time of the closing of the real estate transaction in question, Hickey purchased a Texas Standard Fire Policy on the house and its contents from Logan, issued by Westchester, insuring the house for $7,000.00 and the contents for $20,000.00. The policy named only Hickey as the insured. The place in the policy for naming a mortgagee-beneficiary was left blank. The policy was effective from April 5, 1974, for one year. The premiums for this coverage were paid to and accepted by Westchester. The house burned on July 4, 1974. At that time, three payments had been made by Hickey and Mrs. Meadows on the note. None have been made since.

Without dispute, the house and its contents were a total loss, eliminating need of proof of loss to Westchester on the house, under the provisions of V.A.T.S. Ins. Code, Art. 6.13. The only claim filed with Westchester for loss of contents was signed by Hickey, alone. No payments have been made by Westchester on the policy for any loss.

After the fire, but prior to trial, Mrs. English, Logan, and Westchester learned for the first time that Hickey and Mrs. Meadows were not married. The record indicates that it was during the trial they learned for the first time that Mrs. Meadows is in fact married to Paul Meadows. Mr. Meadows is not a party to this suit.

The policy provides in part that it "shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance, or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

In other parts, the policy provides that the insured "shall render to this Company a proof of loss signed and sworn to by the insured" within ninety-one days after a loss; that the proof of loss "shall reveal to the best knowledge and belief of the insured . . . the time and cause of the loss, the interest of the insured and all others in the property including any encumbrances thereon, . . . the actual cash value of each item of property and the amount of loss thereto . . ."; and that the amount of loss for which the Company may be liable "shall be payable sixty days after proof of loss, as herein provided, is received by this Company."

Mrs. English initiated this suit against Hickey and Mrs. Meadows for recovery on the vendor's lien note and for foreclosure of the deed of trust lien on the property; and against Logan, individually, and Westchester, for recovery as a loss payee under the policy on theories that Logan, acting as Westchester's agent, negligently failed to list her as mortgagee in the policy, and that

under certain equitable principles and by reason of the provisions of V.A.T.S. Ins. Code, Art. 6.15, she is entitled to recover directly under the policy as mortgagee whether named in it or not. By cross-claim against Westchester, Hickey and Mrs. Meadows pleaded for recovery of the full amount of the insurance ($27,000.00) on the house and its contents under the policy. Logan and Westchester denied all liability alleged against them.

Trial was to a jury. The jury made these answers to Special Issues numbered as follows:

(1) It found that Logan negligently failed to list Mrs. English as mortgagee in the loss payable clause of the policy.

(2) It found that Mrs. English "sustained financial damage" as a result of Logan's negligence.

(3) It found that $7,000.00 would fairly compensate Mrs. English for this damage.

(4) It found that Hickey substantially complied with the policy provisions regarding the filing of a signed, sworn proof of loss within 91 days from the date of the fire.

(5) It found that within 91 days from the date of the fire Westchester's agent or representative told Hickey that the proof of loss he filed did not comply with the policy provisions.

(6) It found that Westchester "waived the filing of a formal proof of loss" on the contents of the house. (The jury was instructed in connection with issue no. 6 that Westchester "did waive the filing of a formal proof of loss on the contents if you find from a preponderance of the evidence that (a) the insurance company refused to allow the insured to file a proper total proof of loss within 91 days of the date of loss; or (b) the insurance company conditioned the filing of a proof of loss on contents upon the parties reaching a settlement figure; or (c) the insurance company impliedly denied liability on the loss within 91 days of the date of loss"; and that "an insurance company impliedly denies liability when it pursues a course of conduct such as is reasonably calculated to make the insured believe that compliance on his part with the policy provisions regarding the filing of a proof of loss would be of no effect if observed by him.").

(7) It found that the actual cash value of the contents in the house at the time of the fire was $9,183.00 for that part owned by Hickey, and was $16,605.00 for that part owned by Mrs. Meadows.

(8) It found that prior to the issuance of the policy Hickey falsely represented to Logan, as Westchester's agent, the fact that the occupancy and use of the property Hickey sought to insure was to be by him and Mrs. Meadows "in a relationship as lawful husband and wife."

(9) It found that this misrepresentation or concealment was willful and done by Hickey with intent to deceive.

(10) It failed to find that the misrepresentation or concealment was material to the risk of the insurance sought by Hickey.

(Special Issue No. 11 inquired whether Westchester relied on the representation or concealment, but it was conditioned upon an affirmative answer to Issue No. 10 and accordingly was not answered).

(12) It found that prior to the issuance of the policy Hickey falsely represented to Logan, as Westchester's agent, that the property Hickey sought to insure was owned by him and by Mrs. Meadows "as his lawful wife."

(13) It found that the misrepresentation was willfully made by Hickey with intent to deceive.

(14) It failed to find that the misrepresentation was material to the risk of the insurance sought by Hickey.

(Special Issue No. 15 inquired whether Westchester relied on the misrepresentation, but it was conditioned upon an affirmative answer to Issue No. 14 and accordingly was not answered).

(16) It failed to find that "in making such claim or proof of loss as he made under the policy in question, [Hickey] misrepresented or concealed the fact that persons other than himself owned, or had an interest in, the property for which he claimed a loss."

(Special Issues inquiring whether this alleged misrepresentation or concealment [17] was willfully made with intent to deceive, [18] was material, and [19] "misled" Westchester, were conditioned upon an affirmative answer to Issue No. 16 and accordingly were not answered).

(20) It found that "in making such claim or proof of loss as he made under the policy, [Hickey] misrepresented the value of the contents of the house at the time of the fire."

(21) It failed to find that the misrepresentation was willfully made with intent to deceive.

(Special Issues inquiring whether this misrepresentation [22] was material and [23] "misled" Westchester were conditioned upon an affirmative answer to Issue No. 21 and accordingly were not answered).

(24) It failed to find that after the fire was first discovered by him, Hickey "neglected to use all reasonable means, not inconsistent with his own personal safety, to save and preserve the property in question."

(25) It found that within 91 days after the fire Westchester's agent or representative requested Hickey to "submit himself to examination under oath as to the fire loss."

(26) It failed to find that after the request was made Hickey "failed or refused to submit to such an examination under oath, without reasonable justification and continually refused through November 20, 1974 [the date Westchester expressly denied all liability to Mrs. English, Hickey and Mrs. Meadows]."

Judgment was rendered on the verdict on September 12, 1975. In its pertinent parts, it provided as follows:

1. Mrs. English was awarded a recovery of $8,903.00 against Hickey and Mrs. Meadows, representing principal due on the note, plus interest and attorneys' fees, and a foreclosure of her lien on the property.

2. Mrs. English was awarded a recovery of $7,000.00 from Logan.

3. Mrs. English took nothing from Westchester.

4. Hickey, individually, was awarded recoveries against Westchester of $3,675.00, representing one-half of the policy proceeds on the frame house and prejudgment interest on it from October 16, 1974 (this being the 60th day after proof of loss was allegedly filed by Hickey with Westchester) and $9,642.00, representing his share of the policy proceeds for damages to the contents (found by the jury), with prejudgment interest on it from October 16, 1974.

5. Hickey was awarded recoveries against Westchester "for the use and benefit of Carolyn Meadows" of $3,675.00, representing one-half of the policy proceeds on the frame house, and $11,358.00, "representing the difference between the policy limits on content's and the jury's assessment of the named insured's [Hickey's] damages [$9,183.00]" with prejudgment interest on both awards from October 16, 1974.

6. Mrs. English was given an equitable lien in the amount of $7,350.00 against the awards made to Hickey and Mrs. Meadows.

7. Provision was made for allowing credits in favor of Logan, Hickey, and Mrs. Meadows for any recoveries by

Mrs. English from any of them; and Mrs. English was granted an equitable lien to the extent of $7,350.00 against the awards in favor of Hickey and Mrs. Meadows against Westchester, with provision for crediting her judgments against Logan and Hickey and Mrs. Meadows with any recovery by her under this lien.

8. The policy was reformed to correct an error in the description of the realty.

■ The initial question we must decide is whether the property of Mrs. Meadows was insured under the policy. Westchester asserts that because Mrs. Meadows was not named as an insured in the policy this question must be answered in the negative. We disagree.

It is undisputed that Logan is Westchester's agent. He issued the policy for Westchester and accepted the premiums for Westchester. He testified without objection that he knew the policy was issued to insure the house listed in it and the contents located in that house; that he knew the insured properties (house and contents) were owned by Hickey and the woman he now knows as Mrs. Meadows; that she told him, "I have a lot of nice furniture that I'm going to move into that house"; that, "I assumed that half of the stuff that went in the house was [Hickey's], since [I assumed] they were married"; and that the reason he listed only Hickey as the named insured in the policy was because he thought Hickey was "the head of the household." Logan's knowledge that Mrs. Meadows owned an interest in the house and a part of the contents that were to be insured and his intention to insure her share of the property are imputed to Westchester, his principal. *Fireman's Fund Indem. Co. v. Boyle General Tire Co.*, 392 S.W.2d 352, 356 (Tex.Sup.1965). The issuance of the policy and the collection of premiums with this knowledge and for this purpose constituted a waiver of any requirement that Mrs. Meadows be named as an insured in the policy. *Republic Insurance Company v. Silverton Elevators, Inc.*, 493 S.W.2d 748, 750 (Tex. Sup.1973). In the *Silverton Elevators* case

the Court held, under facts quite similar to ours, that it was proper to award a recovery to the named insured against the carrier "for the benefit of" the actual owner of the insured property.

■ Westchester contends that the evidence conclusively establishes that Hickey's representations to Logan that he and Mrs. Meadows owned the house and contents as husband and wife and that they would occupy and use the house as such (which the jury found were falsely made by Hickey with intent to deceive) were material to the risk and were relied upon by Westchester; or, alternatively, that the jury's answers to Issues 10 and 14, in which it failed to find the representations were material to the risk, are against the great weight and preponderance of the evidence.

■ A misrepresentation in an application for a policy is not material to the risk of insurance unless it actually induces the insurance company to assume the risk. *Harrington v. Aetna Casualty and Surety Company*, 489 S.W.2d 171, 177–178, (Tex. Civ.App.—Waco 1973, writ ref. n. r. e.). It is the carrier's burden to establish this fact as a defense. V.A.T.S. Ins. Code, Art. 21.-16; *Manhattan Life Ins. Company v. Harkrider*, 402 S.W.2d 511, 512 (Tex.Sup.1966).

There is testimony that Mrs. Hickey is separated from her husband; that Hickey is a divorcee; that they plan to marry when Mrs. Meadows secures a divorce; that Hickey works at two jobs; that they intended to and did occupy and use the house, along with Mrs. Meadow's three-year-old daughter, in typical family fashion; and that Hickey misrepresented their marital status to Mrs. English and Logan "so the papers wouldn't have to be changed over, later," and because he thought it was the proper thing to do under the circumstances. Ken Tomlinson, an underwriter employed by Westchester, testified to several reasons why Westchester would not have issued the policy to Hickey if it had known the true relationship between Hickey and Mrs. Meadows. Logan testified he "couldn't say exactly" what Westchester would have

done. Westchester has not offered to return any premiums.

Tomlinson was an interested witness, and the jury was not obliged to believe him. The evidence does not show as a matter of law that the misrepresentations were material to the risk or that Westchester was induced by them to issue the policy by the misrepresentations. A review of the entire record convinces us that the jury's answers on the materiality of the misrepresentations are not against the great weight and preponderance of the evidence.

Westchester asserts that the evidence conclusively shows that in making his claim for personal property loss Hickey misrepresented or concealed the fact that a part of the property for which he sought recovery was owned by others, that he did so willfully with intent to deceive, that it was material, and that it misled Westchester. Alternatively, it is asserted that the answer to Issue 16, in which the jury failed to find the misrepresentation or concealment of property ownership in his claim, is against the great weight and preponderance of the evidence.

Although Hickey made timely, sworn proof of loss of the house, the only instrument filed by him with Westchester which purports to be a proof of loss on the contents of the house was made on a form denominated "Schedule Of Personal Property Lost, Damaged Or Destroyed." It was signed by Hickey, but he did not swear to it. It has columns for showing, "Item," "Where Purchased," "Date Purchased," "Cost To Replace Today," "Cost To Repair," "Depreciation And/Or Betterment," and "Amount Claimed." In it, Hickey listed the items of personal property allegedly destroyed in the fire and their values. Included are not only properties owned by Hickey and Mrs. Meadows, but also a piano owned by Mrs. English. On its face, the schedule does not purport to show the ownership of the items listed. It could be construed to be simply a listing of property lost in the fire. At one point in his testimony, Hickey said that this was the way he intended it. Accordingly, the findings sought by West-

chester are not conclusively established by the proof. We hold also that the jury's failure to find the asserted misrepresentation or concealment of ownership by Hickey in his claim is not against the great weight and preponderance of the evidence when viewed in the light of the whole record.

Westchester contends that the evidence establishes as a matter of law that Hickey's misrepresentation of the value of the personal property in his claim (found by the jury in answer to Issue 20) was willfully made with intent to deceive, was material, and that it misled Westchester. Alternatively, it contends the jury's failure to find the misrepresentation was willfully made with intent to deceive (in answer to Issue 21) is against the great weight and preponderance of the evidence.

Many of the values placed on the property by Hickey and claimed by him in the schedule to be his actual loss exceed the actual cash value of the property. Hickey admitted this fact on the trial and the jury properly found it to be true. Other testimony by Hickey supports his contention that he did not intend by the overvaluations to deceive Westchester, and, for this reason, we overrule Westchester's argument that the evidence conclusively shows that his purpose was deceitful. Nevertheless, we believe all of the evidence preponderates in favor of a finding that Hickey submitted the misrepresented values (totaling over $37,000.00) to Westchester willfully and with intent to deceive, and that if Westchester had tendered payment on that basis Hickey would have accepted it without revealing the true facts on the actual amount of his loss. In short, we find and hold that the jury's answer to Issue 21 in which it failed to find that Hickey's misrepresentation of the value of the contents of the house was willfully made with intent to deceive is against the great weight and preponderance of the evidence. We do not reach the questions relating to the materiality of this deceit and whether Westchester was actually misled by it.

■ The policy provides that the insured shall file a sworn proof of loss within 91

days from the date of loss. This was not done by Hickey. However, there is evidence from which the jury could have believed that within the 91 days Westchester refused to accept Hickey's offer to file a sworn proof of loss and led him to reasonably believe it would be of no effect to do so, and that Westchester was using the proof of loss requirement as a tool for arbitration. These facts support the jury's finding of waiver of proof of loss by Westchester in the answer to Issue 6. *Scottish Union & Nat. Ins. Co. v. Clancey,* 83 Tex. 113, 18 S.W. 439, 441 (1892); *International Service Insurance Co. v. Brodie,* 337 S.W.2d 414, 416 (Tex.Civ.App.—Fort Worth, writ ref'd n. r. e.). In the light of the entire record, Westchester's complaint that the jury's finding of waiver is against the great weight and preponderance of the evidence is without merit and is overruled.

Westchester's remaining points and contentions are also without merit. They are overruled.

Logan asserts he owed no duty to name Mrs. English as a mortgagee in the policy and therefore could not have negligently failed to do so. Mrs. English counters with contentions that she is entitled to recover against both Logan and Westchester, and that the court erred when it overruled her motion for judgment against Westchester. We agree with her.

There is evidence of these facts: Logan is president of Citizens State Bank in Frost, Texas. He is a notary public. He is an agent for several insurance companies, including Westchester. Mrs. English is a retired widow. Logan is her banker, good friend, adviser, and insurance agent. For many years, he has written the insurance on her house, car, "everything," for her. At the time Hickey and Mrs. Meadows purchased the house from Mrs. English, she owned a policy on it issued by Logan. When the three went to Logan for the notary work in question, they handed him the three instruments they had with them which are designated across the top in bold letters, "WARRANTY DEED WITH VENDOR'S LIEN," "DEED OF TRUST," and "REAL ESTATE LIEN NOTE." All three show Mrs. English's interest as a mortgagee in the property in question. After the warranty deed and deed of trust were executed, Logan handed Mrs. English the deed of trust and real estate lien note, telling her, "you get these"; and he handed Hickey the warranty deed, saying "you get this." In Mrs. English's presence, Hickey told Logan that he wanted insurance "to protect her part in the property . . . to take care of her if anything happened." Because of this instruction, and because she "trusted [Logan] implicitly to take care of [her] insurance on the house," Mrs. English did not also instruct Logan to include her in the policy as mortgagee.

■ The trial court and the jury were privileged to believe this proof. It supports the implied finding that when Logan wrote the policy he knew Mrs. English's status as mortgagee. It imposed a duty on Logan as Hickey's agent to comply with Hickey's instructions to include Mrs. English as a mortgagee-beneficiary in the policy. His negligent failure to do so proximately caused Mrs. English's loss of the policy benefits on the house as a named mortgagee-beneficiary in the policy as a matter of law and rendered him and Westchester liable to her for the loss. *Diamond v. Duncan,* 107 Tex. 256, 172 S.W. 1100 (1915); *Boston Ins. Co. v. Rainwater,* 197 S.W.2d 118, 125 (Tex. Civ.App.—Amarillo 1946, no writ hist.); *Sovereign Camp, W.O.W. v. Nash,* 36 S.W.2d 284, 285 (Tex.Civ.App.—San Antonio 1931, no writ hist.).

■ Additionally, under the terms of the deed of trust Hickey and Mrs. Meadows were charged with the duty of procuring insurance on the house for Mrs. English's protection. Under the principles of equity, the mortgagor's breach of his agreement to insure the mortgaged property for the benefit of the mortgagee charges the benefits of any insurance taken out by the mortgagor for his benefit with a lien in favor of the mortgagee; and the mortgagee may proceed directly against the insurer (as Mrs. English has done) to recover his pro rata share of any funds payable under the policy

at the time the insurer learned of his interest. *Farmers Insurance Exchange v. Nelson,* 479 S.W.2d 717, 721 (Tex.Civ.App.— Waco 1972, writ ref'd n. r. e.); *Fidelity & Guar. Ins. Corp. v. Super-Cold Southwest Co.,* 225 S.W.2d 924, 927 (Tex.Civ.App.— Amarillo 1949, writ ref'd n. r. e.). Cf. V.A. T.S. Ins. Code, Art. 6.15, *Standard Fire Insurance Company v. United States,* 407 F.2d 1295, 1299, (5th Cir. 1969).

Logan's points and contentions are overruled. Mrs. English's cross-points in which she asserted a right of· recovery directly against Westchester are sustained.

■ The jury's negative answer to Issue 21, which we have found was against the great weight and preponderance of the evidence, deprived Westchester of its right to answers to other vital defensive issues which were conditionally submitted, and properly so, on an affirmative answer to Issue 21. This requires a reversal of the judgment against Westchester on this part of the case. *Strauss v. LaMark,* 366 S.W.2d 555, 558 (Tex.Sup.1963).

■ The cause of action against Westchester on the contents coverage is "clearly separable without unfairness to the parties," within the meaning of Rule 434, Vernon's Tex.Rules Civ.Proc., from the claims on the house coverage, and it should be severed from them. We order this severance. The awards to Hickey (for both his benefit and the benefit of Mrs. Meadows) for loss of household contents are reversed, and this severed cause is remanded for another trial.

The decree reforming the property description in the policy is affirmed.

The awards to Hickey (both individually and for Mrs. Meadows' benefit) totaling $7,350.00 for policy proceeds for loss of the house are reversed, and judgment is rendered that Hickey and Mrs. Meadows take nothing against Westchester on this part of the policy coverage.

The take-nothing judgment against Mrs. English in favor of Westchester is reversed, and judgment is rendered that Mrs. English recover $7,350.00 (representing the policy proceeds on the house plus prejudgment interest) from Westchester with post-judgment interest on this sum from September 12, 1975 until paid.

The judgment in favor of Mrs. English against Logan for $7,000.00 is affirmed. It is ordered that this recovery shall be credited with any sums paid to Mrs. English by Westchester as policy proceeds.

The judgment awarding Mrs. English recovery against Hickey and Mrs. Meadows on the promissory note, with interest and attorneys' fees, and foreclosure of lien on the property is affirmed. It is ordered that the recovery on the note shall be credited with any sums paid to Mrs. English by Westchester as policy proceeds and with any sums paid to her by Logan on the principal of her judgment against him.

Costs of this appeal are taxed one-half against Hickey and Mrs. Meadows, one-fourth against Westchester, and one-fourth against Logan. The order assessing costs of the trial against Logan and Westchester is affirmed.