996 So.2d 50 (2008)
Michael E. HOPE
v.
S & J DIVING, INC. and Deep Sea Champion, Inc.
No. 2008-CA-0282.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2008.
*51 J. Fredrick Kessenich, Jon A. Van Steenis, Daigle Fisse & Kessenich, Covington, LA, for North American Capacity Insurance Company.
Daniel J. Caruso, Robert L. Redfearn, Jr., Simon Peragine Smith & Redfearn, LLP, New Orleans, LA, for Appellant, Deep Sea Champion, Inc.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
MAX N. TOBIAS, JR., Judge.
The appellant, Deep Sea Champion, Inc. ("Deep Sea"), appeals an adverse judgment dismissing its third-party action against appellee, North American Insurance Co. ("North American"), for defense and indemnity on an exception of no right of action. For the reasons that follow, we reverse the trial court's judgment and remand the matter for further proceedings.
On 22 June 2006, Michael Hope ("Hope"), the plaintiff in the underlying action, brought a Jones Act and general maritime claim against Deep Sea and S & J Diving, Inc. ("S & J"), as a result of injuries he sustained in an accident in July 2005 on the M/V DEEP SEA CHAMPION. At the time of the accident, the vessel was located in Plaquemines Parish, Louisiana, and Hope was employed by Deep Sea as a crew member on the vessel, which was owned by Deep Sea and chartered to S & J for diving operations. Deep Sea and S & J are affiliated companies, both owned by Stanley Jones ("Mr. Jones").
In October 2004, Mr. Jones sought renewal of the insurance coverage for the business operations of Deep Sea and S & J from his insurance agent at Swantner & Gordon Insurance Agency, L.L.P. ("Swantner & Gordon"). Because it employed a master and crew to man the vessel, Deep Sea's insurance needs included Maritime Employer's Liability ("MEL") coverage. *52 Swantner & Gordon contacted International Special Risks, Inc. ("ISR"), an insurance broker specializing in maritime coverage, about obtaining insurance coverage for Deep Sea and S & J.
At the time, Deep Sea and S & J had two separate MEL policies, one providing MEL coverage for Deep Sea's captain and crew and the other providing MEL coverage for S & J's divers. For the renewal, however, ISR obtained a quote from North American for a single policy to provide MEL coverage for "injury to and death of both employee vessel captain/crew and divers diving from vessels in navigable waters." Specifically, in obtaining the quote for the North American MEL policy, ISR expressed the parties' intention as follows:
Our quote covers injury to and death from both employee vessel captain/crew and divers diving from the vessels in navigable waters. The premium of $203,014 plus the [survey] service fee of $3,046 gives a MEL premium before any applicable taxes and stamp fees etc of $206,059. This compares to the existing MEL coverage where there are two separate policies, one for divers and one for vessel crew, where the MEL premium for divers is $200,000 and the MEL premium for vessel crew is not broken out but is included in the overall P & I premium of $50,000 for the vessel "Deep Sea Champion."
The expiring MEL carriers require that crew and divers' names be previously advised to insurers and that employees not so advised are NOT COVERED. Our quote has no such restriction. [Emphasis added.]
A premium was paid and accepted by North American and it issued the MEL policy at issue, covering the time period of 18 October 2004 through 18 October 2005. However, for reasons unknown, the policy listed only S & J as the named insured. Although a portion of the premium was for MEL coverage of the M/V DEEP SEA CHAMPION master and crew, S & J does not own or operate any vessels and does not employ any master or crew.
Deep Sea and S & J timely answered Hope's petition, denying that Hope was a Jones Act seaman. On 25 May 2007, Hope, Deep Sea, and S & J jointly moved to dismiss S & J as a defendant, while Hope reserved all rights to proceed against Deep Sea. Deep Sea sought defense and indemnity from North American on Hope's claims. North American denied Deep Sea's request on the basis that Deep Sea was not a named insured under S & J's MEL policy and, thus, did not afford coverage to Deep Sea or its employees.
On 19 June 2007, Deep Sea brought a third-party action against Swantner & Gordon and Randall Lee, its general partner, ISR, and North American. Deep Sea alleged that Swantner & Gordon and ISR advised it and/or Mr. Jones that they had placed MEL coverage for the captain and crew of the M/V DEEP SEA CHAMPION under the same policy providing MEL coverage to S & J and its divers, rather than through a separate policy issued to Deep Sea as was done in prior years. In its third-party demand, Deep Sea sought a declaratory judgment that it was entitled to coverage under the MEL policy issued by North American for defense and indemnity against the claims asserted by Hope and/or was entitled to have the MEL policy reformed to list it as a named insured.
North American filed exceptions of no right or cause of action and a motion to dismiss based on forum non conveniens to Deep Sea's third-party demand. On 16 November 2007, the trial court rendered judgment granting North American's exception of no right of action, thus rendering the other exceptions moot. In its written *53 reasons for judgment, the trial court found that, under either Texas or Louisiana law, Deep Sea did not have standing to bring the action because no privity of contract existed. Deep Sea's motion for new trial was denied; this devolutive appeal followed.
This court reviews an appeal of an exception of no right of action de novo. Hornot v. Cardenas, 06-1341, p. 12 (La. App. 4 Cir. 10/03/07), 968 So.2d 789, 798. Evidence is admissible in support of, or against, the exception of no right of action. La. C.C.P. art. 931; Eubanks v. Hoffman, 96-0629 (La.App. 4 Cir. 12/11/96), 685 So.2d 597, 600.
The peremptory exception of no right of action tests whether the plaintiff has the capacity or legal interest in judicially enforcing the right asserted. La. C.C.P. art. 927 A(5); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 1096-98, 262 So.2d 328, 334 (1972). Moreover, an action can only be brought by a person having a real and actual interest, which he asserts. La. C.C.P. art. 681. An exception of no right of action assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015, pp. 4-5 (La.11/30/94), 646 So.2d 885, 888. The defendant raising the exception has the burden of proving the exception. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 9 (La.3/2/99), 739 So.2d 748, 755.
Deep Sea has brought two separate causes of action against North American; one for coverage under the MEL policy, or, alternatively, for reformation of the insuring agreement to include Deep Sea as an additional named insured in accordance with the intent of the parties. Deep Sea argues that under either Texas or Louisiana law, the judgment of the trial court must be reversed.[1]
In Lawhorn v. State Farm Ins. Co., 560 So.2d 619, 621 (La.App. 4 Cir.1990), we held that the "fact that [an] insurance policy is issued to one person is not dispositive of whether another person is a `named insured' under the policy." The Louisiana Supreme Court also held that a party not named as an insured under an insurance policy was "effectively a named insured under the policy" where the parties clearly intended for that party to be a named insured. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993).
The same principle holds true under Texas law. In Old Colony Insurance Co. v. Messer, 328 S.W.2d 335 (Tex.Civ.App.-Beaumont 1959), the court stated that "[t]he law is well established that one for whose benefit a contract is made may enforce the contract." Id. at 337, citing 10A Tex.Jur., Contracts, secs. 289-291. Much of that case turned on the issue of what the insurer's agent knew with regard to the insured's interest in the insured property, because the true ownership of the property had not been disclosed to the insurer before the policy of insurance was issued. The court also held that the insurer was charged with the knowledge of its agent. The court found that the defendant insurer waived certain policy provisions after accepting the premium, having been previously informed that the property was *54 owned by someone other than the named insured. Id.
North American relies on Zaiontz v. Trinity Universal Ins. Co., 87 S.W.3d 565 (Tex.App.-San Antonio 2002), to support its argument that a non-party to an insurance policy lacks standing to reform the policy. However, a close reading of the case reveals that it is easily distinguishable from the case at bar. In Zaiontz, the plaintiff, who was a non-party to the insurance contract between his employer and Trinity, sought to reform the contract to permit coverage for his bodily injuries, although the policy contained an employee exclusion clause. The court held that the phrase "no employee" must be interpreted to mean "no employee"  whether or not the employee is an executive officer. Id. at 570. In the instant matter, Deep Sea is not trying to remove an exclusion from the subject policy; it seeks reformation to reflect the true intent of the parties when the insurance was procured.
North American correctly points out that it was not a party to the e-mail between ISR and S & J. However, when obtaining the North American quote, ISR was well aware that two separate policies, one for Deep Sea and one for S & J, were being consolidated into one policy. As in Old Colony, supra, part of the insurance was for the vessel master and crew in which S & J had no insurable interest. If ISR is recognized as an agent for North American, this knowledge may be imputed to North American.
For example, in Westchester Fire Ins. Co. v. English, 543 S.W.2d 407 (Tex.Civ. App.-Waco 1976), the insurer's agent failed to list one of the defendants as an additional insured while knowing that the defendant had an insurable interest in the property and contents covered by a home-owner's policy. The court held that knowledge of the insurer's agent would be imputed to Westchester, his principal. The court further found that the insurer, by issuing the policy and collecting premiums with this knowledge and for this purpose, waived the requirement that the defendant be named as an insured in the policy. Id. at 412. In addition, the court held that a misrepresentation in an application for insurance is not material to the risk of insurance unless it actually induces the insurer to assume the risk. Id.
In its third-party demand, Deep Sea alleges that:
E. Swantner & Gordon and ISR, through Swantner & Gordon, represented to Deep Sea that it would provide MEL coverage for the captain and crew of the M/V DEEP SEA CHAMPION under the same policy providing MEL coverage to S & J for its divers rather than through a separate MEL policy issued to Deep Sea as had been done in the past.
Assuming that the petition states a valid cause of action, Deep Sea must be allowed the opportunity to demonstrate that it was the parties' intent that it be a named insured under the North American policy. For these reasons, we find that Deep Sea's first assignment of error has merit.[2]
In addition, and in the alternative, Deep Sea argues that it has a right of action or "standing" under Texas law to seek reformation of the policy to reflect that it is entitled to coverage for defense and indemnity against the claims asserted by plaintiff, Hope. We agree.
Louisiana has adopted the rule that a written insurance contract can be reformed to conform to the original intention *55 of the parties. In Samuels v. State Farm Mut. Ins. Co., 06-0034 (La.10/17/06), 939 So.2d 1235, the Court stated: "As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." Id., pp. 6-7, 939 So.2d at 1240, citing William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice, Vol. 15, § 5, p. 14 (2nd Ed.1996); Earl Williams Const. Co. v. Thornton & Brooks, Inc., 501 So.2d 1037, 1039 (La.App. 2 Cir.), writ denied, 504 So.2d 881 (La.1987). "In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy." Id. "Parole evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous." Id. In Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806 (1956), the Court indicated that "the burden is on the one seeking the reformation to prove the error, and he must carry said burden by clear, and the strongest possible proof." Id. This requirement was modified in Bonadona v. Guccione, 362 So.2d 740 (La.1978), which held that the clear and convincing evidence of mutual mistake was necessary only when a party seeks to prove that the insurer had insured a substantially different and greater risk than that expressed by the written policy. Id. at 744. On the other hand, only the normal burden of proof by a preponderance of the evidence was required to reform a policy in a manner which did not substantially affect the risk assumed by the insurer. Id.
In Taylor v. Audubon Ins. Co., 357 So.2d 912, 914-15 (La.App. 4 Cir.1978), we permitted reformation of a fire policy, noting:
Were this record to contain affirmative evidence that Audubon Insurance Company would not have covered this particular frame house had they known the Taylors owned it rather than Mrs. Ford, we would be far less inclined to affirm. In fact, any representation made in connection with the obtaining and maintaining of the coverage by Mrs. Ford which would be demonstrably different if submitted by Mr. and Mrs. Taylor could be the basis for a valid argument against reformation, for there is certainly no presumption in its favor. But there is nothing before us which, in any way, indicates that the company would have written the policy in any different way, or charged any different premium, or insured the structure for any different amount, or imposed any different requirements for continuation of the coverage if the named insureds had been Mr. and Mrs. Taylor, or Mrs. Ford and Mr. and Mrs. Taylor as their interests might appear. [Emphasis added.]
Texas law provides for a similar cause of action. In Howard v. INA County Mut. Ins. Co., 933 S.W.2d 212, 219 (Tex.App.-Dallas 1996), the court stated:
Courts may equitably reform a contract if the parties prove a definitive and explicit agreement, understood in the same sense by both, but by their mutual mistake, the written contract fails to express the agreement. Huttleston v. Beacon Nat'l Ins. Co., 822 S.W.2d 741, 746 (Tex.App.-Fort Worth 1992, writ denied) (citing Champlin Oil & Ref. Co. v. Chastain, 403 S.W.2d 376, 377 (Tex. 1965). While an insurance policy may be reformed because of mutual mistake, reformation necessarily contemplates alteration or amendment of the policy language to reflect the true intent of the parties at the time of its inception. See Huttleston, 822 S.W.2d at 746; St. Paul Lloyd's Ins. Co. v. Fong Chun Huang, 808 S.W.2d 524, 527 (Tex.App.-Houston *56 [14th Dist.] 1991, writ denied) (citing Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379 (Tex.1987) (underlying objective of reformation is to correct mutual mistake made in preparing written instrument)).
We find that both Louisiana and Texas law provide a cause of action for reformation of an insurance contract.
North American argues that because neither it nor Deep Sea was a party to the e-mail in question, Deep Sea cannot rely on it to give it a right of action or standing. We disagree. North American's argument ignores the fact that Swantner & Gordon and ISR had knowledge that may be imputed to it. It is obvious from the e-mail that the insurance brokers knew that two policies were being consolidated into one; therefore, North American should have known that both Deep Sea and S & J were to be named insureds. We find that Deep Sea is entitled to put forth evidence to support its claims as set forth in the third-party demand.
Accordingly, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
REVERSED; REMANDED.
NOTES
[1] The trial court did not perform a conflicts of law analysis to determine whether Texas or Louisiana law should apply. The parties have not made this an issue on appeal; thus we do not address it. However, we find the same result occurs regardless of which law is applied to the issues before us.
[2] We are not saying that Deep Sea will or should prevail on its claim, only that Deep Sea has a right of action or standing to assert it.