CBI INDUSTRIES, INC., Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Walbrook Insurance Company, Ltd., Anglo American Insurance Company, Ltd., Kraft Insurance Company, Ltd., El Paso Insurance Company, Ltd., Louisville Insurance Company, Ltd., Ludgate Insurance Company, Ltd., Mutual Reinsurance Company, Ltd., Compangie Euro-

peenne D'Assurances Industrielles, S.A., Assicurazioni Generali, S.P.A., Lexington Insurance Company, Turegum Insurance Company, Dominion Insurance Company, and Rome and Companies, Appellees.

No. 01–91–00710–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 5, 1993.

Rehearing Denied Sept. 9, 1993.

Debora D. Ratliff, Houston, for appellant.

Daniel F. Shank, Tom Lorance, David W. Prasifka, Kent E. Westmoreland, Bill Luyties, Houston, for appellees.

Before DUGGAN, DUNN and MIRABAL, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from the granting of summary judgments in favor of numerous insurance companies in an action for damages, injunctive relief, and a declaration of coverage brought by their insured. The issue in the trial court was whether the "absolute pollution exclusions" relied upon by the defendants were ambiguous as to the meaning to be given the term "pollution," an issue currently being faced by other jurisdictions across the country as well as here in Texas.

In its single point of error, CBI contends that the trial court erred in granting the summary judgments because there were ambiguities, both patent and latent, in the exclusions, and that the trial court should

have permitted CBI to proceed with discovery. We agree that CBI was not given a reasonable opportunity for discovery, and therefore reverse and remand without deciding whether there are ambiguities in the exclusions.

The appellant/insured is CBI Industries, Inc. (hereinafter CBI). The appellees, CBI's insurers, may be grouped in three sets. They are as follows: (1) National Union Fire Insurance Company of Pittsburgh, Pennsylvania (hereinafter National Union), who provided the bottom layer of CBI's insurance; (2) Walbrook Insurance Company, Ltd., Anglo American Insurance Company, Ltd., Kraft Insurance Company, Ltd., El Paso Insurance Company, Ltd., Louisville Insurance Company, Ltd., Ludgate Insurance Company, Ltd., Mutual Reinsurance Company, Ltd., Compangie Europeenne D'Assurances Industrielles, S.A., Assicurazioni Generali, S.p.A., Lexington Insurance Company, Turegum Insurance Company, and Dominion Insurance Company (hereinafter collectively Walbrook), who provided the middle layer of CBI's insurance; and (3) Rome and Companies (hereinafter Rome), who provided the top layer of CBI's insurance.

CBI filed suit against National Union, Walbrook, and Rome seeking coverage for claims asserted against CBI in approximately 60 lawsuits in various Texas courts. Those suits sought recovery from CBI and others for personal injuries and property damage arising out of the release of hydrofluoric acid gas into the atmosphere. CBI's petition reflects that on October 30, 1987, Marathon Petroleum Company was engaged in a "turnaround" operation at its Texas City refinery, in which the refinery was shut down for the performance of maintenance, cleaning, and parts replacement. CBI worked as a contractor for Marathon on the turnaround. Marathon directed CBI to remove a convection section from an alkylation heater unit for the section to be refurbished offsite by others. CBI used a crane to remove the section. During the lifting of the section, the crane began to tip, forcing the operator to drop the load, which fell on a storage tank containing hydrofluoric acid. The acid was released and formed a cloud. Texas City residents were allegedly harmed as a result. CBI tendered its claims to its insurers, who denied coverage based on "pollution" exclusions.

On October 8, 1990, CBI brought its action against National Union, Walbrook, and Rome, seeking a declaration of coverage for the claims. On February 28, 1991, the defendants began moving for summary judgment on grounds that the "absolute pollution exclusions" in the policies precluded coverage as a matter of law.

CBI's response asserted that there were ambiguities in the exclusions as to the meanings of the terms "pollution," "pollutants," and "to pollute," and that discovery was necessary in order to demonstrate the ambiguities and correctly construe the exclusions. On April 11, 1991, the trial court granted summary judgments to the defendants. The only evidence procured by CBI that was before the trial court at the time summary judgment was granted consisted of affidavits from CBI's own personnel and unauthenticated documents such as transcripts of testimony given before the Texas State Board of Insurance.[1] None of the items submitted to the trial court by CBI were obtained through discovery. CBI filed a motion for new trial, which was overruled.

 The trial court's role in determining whether to grant summary judgment in a case involving the construction of an insurance policy is to determine whether there is ambiguity in the applicable terms of the policy. *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 917 (Tex.App.—Fort Worth 1988, writ denied). Whether the applicable terms are ambiguous is a question of law. *Id.* Where the policy is worded such that it can be given only one reasonable construction, it is not ambiguous, and should be enforced as written. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). When the language in an insurance policy is ambiguous,

---

1. While the record seems to indicate that the documents were not brought before the trial court until CBI filed its motion for new trial, counsel for National Union conceded in oral argument that the court considered the documents for summary judgment purposes, as well.

the policy "should be construed strictly against the insurer and liberally in favor of the insured." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987). Courts must not create new constructions when the policy's language is clear and plain. *Entzminger v. Provident Life & Accident Ins. Co.*, 652 S.W.2d 533, 537 (Tex.App.—Houston [1st Dist.] 1983, no writ). In fact, where there is no ambiguity, it is the court's *duty* to give the words their plain meaning. *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

A patent ambiguity is one that is evident from the face of the contract. *See Universal Home Builders, Inc. v. Farmer*, 375 S.W.2d 737, 742 (Tex.Civ.App.—Tyler 1964, no writ). A latent ambiguity is described as follows:

> A latent ambiguity arises from extraneous or collateral facts which make the meaning of a written instrument uncertain although the language thereof be clear and unambiguous. The usual instance of a latent ambiguity is one in which a writing refers to a particular person or thing and is thus apparently clear on its face, but upon application to external objects is found to fit two or more of them equally.

4 Williston on Contracts 627 (3d ed.1961). *See also Farmer*, 375 S.W.2d at 742.

The "latent ambiguity rule" has been stated as follows:

> [E]ven though a written contract be unambiguous on its face, parol evidence is admissible for the purpose of applying the contract to the subject matter with which it deals; and if by reason of some collateral matter an ambiguity then appears, proof of the facts and circumstances under which the agreement was made is admissible, in order that the language used in the contract may be read in the light thereof for the purpose of ascertaining the true intent of the parties expressed in the agreement.

*Bache Halsey Stuart Shields, Inc. v. Alamo Savings Ass'n of Texas*, 611 S.W.2d 706, 708 (Tex.Civ.App.—San Antonio 1980, no writ) (quoting *Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004, 1005 (Tex.1941)).

In *Bache*, the issue was the construction of a lease. 611 S.W.2d at 707. The trial court granted summary judgment to the defendant on the grounds that the language of the exclusionary clause in the lease was clear and unambiguous. *Id.* at 708. The court of appeals agreed that the language was clear and unambiguous, but held that the plaintiff had nevertheless raised a fact issue, via summary judgment evidence, that the clause was *latently* ambiguous. *Id.* The court, therefore, reversed the summary judgment. *Id.*

Our holding here is that CBI should have been afforded the same opportunity as the plaintiff in *Bache*. Rule 166a(c) of the Texas Rules of Civil Procedure, regarding summary judgments, states in pertinent part as follows:

> The [summary] judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file . . . show that, except as to the amount of damages, there is no genuine issue as to any material fact . . .

This rule clearly contemplates that the trial court allow a reasonable opportunity for discovery before granting a summary judgment.[2] The purpose of discovery is to allow a party an opportunity to garner relevant facts before the resolution of the case. *See Martinez v. Rutledge*, 592 S.W.2d 398, 399 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). The discovery process is a party's opportunity to obtain facts pertaining to its claim or defense. *See Texaco, Inc. v. Dominguez*, 812 S.W.2d 451, 453 (Tex.App.—San Antonio 1991, orig. proceeding). The rules governing discovery should be liberally construed. *Martinez*, 592 S.W.2d at 399.

Considering the circumstances of this case, i.e., that CBI was entitled to attempt to show a latent ambiguity in the exclusions,

---

2. We recognize that Tex.R.Civ.P. 166a(b) states that a defendant may *move* for summary judg-

ment at *any* time.

that summary judgment was granted just six months and three days after the filing of a case with unique and complex issues, and that the insurance companies presented a motion for protective order to preclude discovery by CBI pending resolution of the summary judgment issue, we hold that CBI was not given sufficient time to make a reasonable attempt to discover evidence on the issue of "applying the contract to the subject matter with which it deals," and thereby raise a fact issue on latent ambiguity.

Our conclusion that more of an opportunity to discover facts was necessary here is supported by what CBI was able to present to the trial court *without* formal discovery:

(1) **Testimony before the Texas State Board of Insurance in which insurance industry personnel discussed an alleged ambiguity in pollution exclusions**

At the "Hearing to Consider, Discuss, and Act On Commercial General Liability Forms Filed by the Insurance Services Office, Inc.," held on October 31, 1985, there was testimony from the Board and from a company representative that addressed one such exclusion. The two witnesses agreed that the exclusion would not be read literally.

(2) **A Texas State Board of Insurance filing by the Insurance Services Office (ISO) that indicated that an "absolute" pollution exclusion was not necessarily "absolute"**

In a 1984 "Explanatory Memorandum" to the pollution exclusion endorsement, the ISO wrote that:

This endorsement introduces a total pollution exclusion for bodily injury and property damage arising from the discharge of pollutants. *The exclusion does not apply to damages arising out of products or completed operations nor to certain off-premises discharges of pollutants.*

(Emphasis added.)

(3) **Correspondence from the Independent Insurance Agents of America (IIAA) to the ISO complaining that the absolute pollution exclusion was ambiguous**

In the 1985 correspondence, from the chairman of the IIAA Pollution Task Force to the senior vice-president of ISO, the chairman complained that the exclusion could, as written, exclude some situations not actually meant to be excluded. He wrote that the IIAA was "concerned that this confusion results from ambiguous policy language which should be corrected."

(4) **An article by an insurance broker complaining that the term "pollution" was inadequately defined and concluding that "[t]he pollution exclusion needs to be rewritten so that whatever its intent, that intent is clear."**

The article was written in 1987 by an assistant vice-president of Marsh & McLennan, Ltd., whose United States branch was the broker of CBI's policies. The author wrote:

In a sense, we all know what pollution is, yet we seem to be unable to provide a meaningful definition.

. . . . .

Our courts do not hesitate to reject contractual clauses that defeat the very intent of the contract. If insurers argue a strict interpretation of our exclusion, the exclusion will be rewritten by the courts. We may not like their handiwork.

The pollution exclusion needs to be rewritten so that whatever its intent, that intent is clear.

The trial court's consideration of these items, obtained without benefit of formal discovery, should have indicated to the court that more time was needed for CBI to attempt to produce evidence, via formal discovery, that *might* have raised a fact issue on latent ambiguity.

The matter of discovery rests within the discretion of the trial court, and our standard of review is thus abuse of discretion. *Bruner v. Exxon Co., U.S.A.*, 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied). Because we conclude that, *under the particular facts of this case*, the trial court abused its discretion in not allowing CBI sufficient discovery before granting summary judgments

for the defendants, we sustain CBI's point that the trial court erred in not allowing it to proceed with discovery before granting the summary judgments.

We reverse the summary judgments and remand the cause to the trial court.