**UNION PACIFIC RESOURCES COMPANY, Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, Allianz Insurance Company, Allianz Underwriters, Inc., American Home Assurance Company, California Union Insurance Company, Central National Insurance Company of Omaha, Century Indemnity Company, Certain London Market Insurance Companies, Certain Underwriters At Lloyd's London, Employers Surplus Lines Insurance Company, Fidelity & Casualty Company of New York, First State Insurance Company, Forum Insurance Company, Gibraltar Casualty Company, Granite State Insurance Company, Harbor Insurance Company, Insurance Company of the State of Pennsylvania, International Insurance Company, International Surplus Lines Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company, Pacific Insurance Company, St. Paul Mercury Insurance Company, Stonewall Surplus Lines Insurance Company, Appellees.**

No. 2–93–219–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 14, 1994.

Rehearing Overruled April 13, 1995.

Cantey & Hanger, L.L.P., and Ralph H. Duggins, Sloan B. Blair, Gould, Broude & Nelson, P.C., and Jonathan D.F. Nelson, Fort Worth, Jenner & Block, Theodore R. Tetzlaff, John H. Mathias, Jr., Barbara S. Steiner, Robert S. Markin, John D. Shugrue, Chicago, IL, for appellant.

Susman Godfrey L.L.P., and Mark L.D. Wawro, Michael L. Cohen, Houston, for appellee Aetna Cas. & Sur. Co.

Crowell & Moring, and Andrew H. Marks, Amy L. Schreiber, Washington, DC, Locke, Purnell, Rain & Harrell, and Robert W. Mowrey, Stewart H. Thomas, Dallas, for appellee California Union Ins. Co., Cent. Nat. Ins. Co. of Omaha, Century Indem. Co., and St. Paul Mercury Ins. Co.

Shannon, Gracey, Ratliff & Miller, L.L.P., and Kleber C. Miller, David P. Cotten, Fort Worth, Lord, Bissell & Brook, and Thomas J. Strueber, Paul L. Fields, Jr., Atlanta, GA, for appellee Certain Underwriters At Lloyd's, London and Certain London Market Ins. Companies.

Brief of Amici Curiae (RECEIVED BUT NOT FILED PER TEXAS RULES OF APPELLATE PROCEDURE 20) Mid–America Legal Foundation, Quantum Chemical Corp., Sterling Electronics Corp., and Texas Chem. Co.—Anderson, Kill, Olick & Oshinsky, and Eugene R. Anderson, Jordan S. Stanzler and John A. MacDonald, New York City, and Covington & Burling, and Christopher N. Sipes, of Washington, DC.

Before HILL, C.J., and FARRIS and HICKS, JJ.

## OPINION

FARRIS, Justice.

Appellant, Union Pacific Resources Company (UPRC), brought a declaratory action to determine the extent of coverage under comprehensive general liability policies issued by appellees, and sued appellees for damages after appellees denied coverage for pollution claims against UPRC because of its deposit of materials at Operating Industries, Inc., an industrial waste landfill. The trial court denied discovery to UPRC regarding the interpretation of the pollution exclusions. The trial court granted appellees summary judgment, holding policy pollution exclusions barred coverage for the liabilities UPRC incurred due to its disposal of waste at the landfill. We reverse the trial court's grant of judgment because, as a matter of law, UPRC's routine waste disposal at the landfill is not the relevant "occurrence" for determining policy coverage and because a material fact issue exists as to whether any property damage occurred due to a release of waste into the surrounding environment. We further hold the court abused its discretion in not allowing UPRC sufficient discovery on

the interpretation of the pollution exclusions before granting summary judgment for the appellees.

For more than three years UPRC routinely disposed of potentially polluting wastes from its oil drilling and refining operations by sending them to an industrial landfill. Dumping these wastes at the landfill was a legal and accepted method of disposal. After UPRC discontinued use of the landfill, the United States Environmental Protection Agency (EPA) sued UPRC and others to recover cleanup costs at the landfill site, under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. § 9607(a) (West 1983). UPRC entered into a partial consent decree, agreeing to participate in the cost of remedying pollution hazards at the landfill. UPRC alleges it has incurred liability for damages arising from the landfill operation and it has received third party claims concerning the landfill and anticipates further claims. UPRC notified appellees of the landfill claims, but appellees denied coverage.

The appellees' motion for summary judgment asserted there can be no liability because the policies are unambiguous and the pollution exclusions "bar UPRC's claims relating to the cleanup of the [landfill] because UPRC's routine and deliberate discharges of wastes into the [landfill] over a period of several years were neither 'sudden and accidental' nor 'sudden, unintended and unexpected.'" The appellees' ground for summary judgment does not involve a factual dispute, but turns on the interpretation of policy language.

Appellees' comprehensive general liabilities policies obligate them to pay sums on behalf of UPRC which it is legally obligated to pay because of property damage caused by an occurrence. The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." The several insurance policies each include one of two types of pollution exclusions, a "sudden and accidental" exclusion or a "sudden, unintended and unexpected" exclusion.

Those policies containing a "sudden and accidental" pollution exclusion exclude liability for property damage arising out of the discharge, dispersal, release, or escape of waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental. Those policies containing a "sudden, unintended and unexpected" pollution exclusion exclude liability for property damage directly or indirectly caused by seepage, pollution, or contamination, provided the exclusion shall not apply to liability for property damage where the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening.

At the trial level, the appellees asserted there was no genuine issue of material fact and claimed their entitlement to summary judgment as a matter of law. Specifically, appellees argued the pollution exclusions in their policies bar UPRC's claims relating to the cleanup of the landfill because UPRC's routine and deliberate discharges of wastes into the landfill over a period of years were neither "sudden and accidental" nor "sudden, unintended and unexpected." In essence, appellees contended UPRC's liability for cleanup under CERCLA was its dumping of wastes at the landfill, and because that dumping was intentional, it was not an accident. UPRC argued the occasion which gave rise to the pollution claims against it was not its disposal of wastes but the actual and potential penetration of those wastes into neighboring land and ground water. The trial judge concluded, and appellees' counsel agreed, that to grant summary judgment he would have to find the occurrence at issue was the dumping at the landfill.[1]

■ We first review UPRC's general point of error that the trial court erred in granting

---

1. The trial court's conclusion is in the statement of facts from the hearing on the appellees' mo-   tions for summary judgment.

summary judgment. *See Malooly Bros. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970). The standard of review for a summary judgment requires the movant to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; evidence favorable to the nonmovant will be taken as true; and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See* TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Mgt.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

In reviewing this point of error, we must first determine whether the occurrence at issue is the waste disposal or the leakage into the environment for purposes of coverage under the policy. Both policies at issue define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... *property damage neither expected nor intended* from the standpoint of the insured." [Emphasis added.] Courts from other jurisdictions that have interpreted the term "occurrence" are split on the issue of what constitutes an occurrence under a policy where pollution damage has occurred.

The analysis of the term "occurrence" rests on whether the activity was expected or intended from the standpoint of the insured. *See Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex.1976). The language is unequivocal in the definition of "occurrence." It is the property damage, and not the accident, which is neither expected nor intended.

Other language in the policy supports this conclusion. The phrase "seepage, pollution or contamination" in the "sudden, unintended or unexpected" exclusions and the phrase "discharge, dispersal, release or escape" in the "sudden and accidental" exclusions do not encompass the *disposal* of wastes. All these terms connote the substance leaving the location of placement. None of these terms is normally used to describe the placement of a substance into an area. *See Queen City Farms, Inc. v. Central National Ins. Co. of Omaha*, 124 Wash.2d 536, 882 P.2d 703, 719 (1994). Based on the definition of "occurrence," and the language in the pollution exclusion clauses, we hold it is the consequence rather than the event itself which must be neither expected nor intended.

UPRC's deposit of pollutants into a landfill cannot be the triggering event. *See id.* Rather, the subsequent escape of pollutants from the disposal site is the critical inquiry for purposes of determining coverage. *Id.*; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 709, 607 N.E.2d 1204, 1222 (1992). The pertinent "occurrence" is the migration or emanation of wastes from the point of deposit that results in property damage. The relevant inquiry in interpreting both types of policies presented here, then, is whether the policy holder expected the landfill to discharge the waste into the surrounding environment. *See Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 704 (7th Cir.1994).

We hold the trial court erred in granting summary judgment as a matter of law. UPRC's routine waste disposal at the landfill is not the relevant "occurrence" for determining policy coverage. We hold where material has been deposited in a place which was believed to serve as a landfill for such waste, the polluting "occurrence" is the "discharge, dispersal, release, or escape" or "seepage, pollution or contamination" of toxic material into the environment. We sustain UPRC's first point of error. Because we reverse the trial court's grant of summary judgment, we need not address the specific grounds for reversal asserted by UPRC in the second, fourth, and fifth points of error.

As for the third point of error, we review whether the trial court abused its discretion in denying UPRC the right to take discovery on the purpose, usage, and interpretation of the pollution exclusions. *See Bruner v. Exxon Co., U.S.A.*, 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied). The purpose of discovery is to allow the parties to obtain the fullest knowledge of facts and issues prior to trial. *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978). The rules governing discovery should be liberally construed. *Martinez v. Rutledge*, 592 S.W.2d 398, 399 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

■ We review the denial of discovery in this case in light of the rules governing the interpretation of insurance policies. Insurance policies are contracts and as such their interpretation is controlled by the rules of contract construction. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). Whether a policy is ambiguous is a question of law for the court. *See Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 917 (Tex.App.—Fort Worth 1988, writ denied). In determining whether an insurance contract is ambiguous, the contract language is to be given its "ordinary and generally accepted meaning." *Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979).

■ The court's primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). Where, after considering the wording of the policy, a question relating to its meaning is presented, the court is to take the wording of the instrument, consider the same in the light of the surrounding circumstance, apply the pertinent rules of construction thereto and thus settle the meaning of the contract. *Aetna Life & Cas. Co. v. Gunn,* 628 S.W.2d 758, 760 (Tex.1982). Evidence of surrounding circumstances may be consulted to determine the parties' intent. *Coker v. Coker,* 650 S.W.2d 391, 394–95 (Tex.1983); *Sun Oil Co. (Del.) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); *Commonwealth Lloyds Ins. Co. v. Downs,* 853 S.W.2d 104, 110 (Tex.App.—Fort Worth 1993, writ denied).

In review of the surrounding circumstances, the standard of interpretation is "the meaning that would be attached to the integration by a reasonably intelligent person *acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration,* other than oral statements by the parties of what they intended it to mean." *Sun Oil Co.,* 626 S.W.2d at 731 n. 5 (citing *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968)) (emphasis in original). With the insurance business regulated and the policy forms proscribed by a state insurance commission, "the actual intent involved in the precise words is as much or more the intent of the Insurance Commission which prescribes the wording of the policy as it is the intent of the parties." *United States Ins. Co. v. Boyer,* 153 Tex. 415, 269 S.W.2d 340, 341 (1954); *Dairyland County Mut. Ins. Co. v. Wallgren,* 477 S.W.2d 341, 342 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.).

Courts from jurisdictions across the country are split as to the interpretation of pollution exclusion clauses. The interpretation of pollution exclusions for purposes of insurance coverage is a novel one in Texas. Both sides argue conflicting views of the interpretation of the pollution exclusion. Neither conflicting views of coverage, nor disputation, is sufficient to *create* an ambiguity. *Forbau,* 876 S.W.2d at 134. To give effect to the parties' intent, discovery is necessary to determine the "meaning that would be attached to the integration by a reasonably intelligent person *acquainted with all operative usages* " of insurance policy language from the standpoint of the insured. *See Sun Oil Co.,* 626 S.W.2d at 731 n. 5 (emphasis in original).

■ Therefore, the trial court should have permitted discovery to determine the intent of the parties from drafting history, regulatory history, and relevant action of the State Board of Insurance, as well as other circumstances surrounding the making of the policy. Like the court in *CBI Industries, Inc. v. National Union Fire Ins. Co.,* 860 S.W.2d 662, 666–67 (Tex.App.—Houston [1st Dist.] 1993, writ granted), we conclude that, under the facts of this case, the trial court improperly denied UPRC the right of discovery regarding the interpretation of the pollution exclusions in the policies at issue. We hold the trial court abused its discretion in not allowing UPRC sufficient discovery before granting summary judgment for the appellees. Accordingly, we sustain UPRC's third point of error.

In analyzing this case, this court prefers to take a rudimentary approach like that taken by the Washington Supreme Court in *Queen City Farms, Inc. v. Central National Ins. Co. of Omaha,* 126 Wash.2d 50, 882 P.2d 703 (1994). Published opinions support virtually all the arguments made by the insurers and insured in this case, as well as the many amici curiae who have provided briefing. We

make no attempt to catalogue all the decisions, nor cite to all the published cases available as support for a proposition. *See Queen City Farms, Inc.*, 882 P.2d at 716. Persons interested in researching the law in this area will find ample guidance in the cited sources.

■ We note appellees cite to a number of unpublished opinions, violating TEX.R.APP.P. 90(i). We have disregarded those cases cited by appellees which are not published authority, and rely only on the merit of published opinions. *See Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex.App.—Austin 1991, writ denied).

We reverse the decision of the trial court on the motion for summary judgment. We also reverse the trial court's decision to deny UPRC the right of discovery regarding the interpretation of the pollution exclusion in the policies at issue. We remand the case for further proceedings consistent with this opinion.

HILL, C.J., recused.