# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 99-1157/1162

_____

| | | |
|---|---|---|
| Agricultural Insurance Company and American National Fire Insurance Co., | * * * | |
| Appellants/Cross-Appellees, | * * | |
| v. | * * | |
| Focus Homes, Inc. and Focus Homes Corporation, | * * * | Appeals from the United States District Court for the |
| Appellees/Cross-Appellants, Third Party Plaintiffs, | * * | District of Minnesota. |
| v. | * * * | |
| Minnesota Workers' Compensation Assigned Risk Plan, | * * * | |
| Third Party Defendant. | * | |

_____

Submitted: March 13, 2000
Filed: May 5, 2000

_____

Before RICHARD S. ARNOLD, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

This declaratory judgment action was brought by Agricultural Insurance Company and American National Fire Insurance Co. who had issued insurance policies to Focus Homes, Inc. (Homes) and Focus Homes Corporation (the Corporation). The insurers now appeal from the district court's denial of their summary judgment motion and dismissal of their action. Homes and Corporation cross-appeal the district court's failure to grant them summary judgment. We reverse and remand.

I.

In the underlying action, three women employees sued Homes and the Corporation under a number of theories, only one of which survived on appeal. See Crist v. Focus Homes, Inc., 122 F.3d 1107 (8th Cir. 1997). Homes and the Corporation operated a residential treatment facility, Yates House, at which the incidents alleged in the employees' complaint occurred. The surviving claim of sexual harassment alleged that the employees had been physically and sexually assaulted by a severely autistic and retarded sixteen year old male resident of the facility, J.L., that they had reported their problems with J.L., that Homes and the Corporation had belittled or disregarded their complaints and relieved them of their supervisory authority, and that they had been constructively discharged by the absence of any remedy to the situation. Homes and the Corporation tendered defense of this action to the insurers, who denied coverage. After the sexual harassment claim was reinstated on appeal in August 1997, the Crist parties agreed to submit it to binding arbitration and eventually arrived at a settlement. The insurers brought this action in February 1998 to obtain a declaration that they had no duty to defend or indemnify the insured parties.

During the time of the incidents alleged in the Crist complaint, Homes and the Corporation had been insured under three policies issued by the insurers. Both were named insureds on a commercial general liability policy (CGL) and a professional liability policy (PL) issued by the Agricultural Insurance Company, and Homes was the

named insured on a commercial umbrella policy (CU) issued by the American National Fire Insurance Company. The CGL policy provided coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies[,]" but did not cover injury "expected or intended from the standpoint of the insured." Appellant's App., 77. The CU policy covered "those sums in excess of 'underlying insurance' or the retained limit that the 'Insured' becomes legally obligated to pay as damages because of 'injury'[.]" Id. at 157. The CGL and CU policies limited coverage to damage resulting from an "occurrence," defined under the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 88, 163. The PL policy covered "those sums that the Insured becomes legally obligated to pay as damages because of a professional error or mistake made . . . by you . . . arising out of the performance or failure to perform any professional service for others in your capacity as a residential care facility." Id. at 110. All the policies contained a number of exclusion provisions.

Both sides moved for summary judgment, and the district court ruled in favor of Homes and the Corporation, finding coverage under each of the three policies. It found that the Crist employees had alleged injuries within the scope of the CGL and CU policies and that the injuries were neither expected nor intended by Homes and the Corporation because they had been initiated by J.L. The court held that policy exclusions for injuries which occurred in the scope of employment or as a result of employment practices did not apply. The court also ruled that the PL policy covered the allegations in the Crist complaint because the employee injuries arose from treatment decisions for J.L. made by Homes and the Corporation.

The insurers contend on appeal that the Crist allegations did not invoke coverage under any of the policies. They argue that the complaint did not allege "occurrences" causing "bodily injury" as defined in the CGL and CU policies and that exclusions for employer's liability, employment practices, and workers compensation would bar

coverage in any event. They further assert that there is no coverage under the PL policy because the complaint did not state a malpractice claim and the policy's exclusions for employer's liability and workers compensation would also apply. Homes and the Corporation respond that the employees did allege occurrences causing bodily injury within the coverage of the CGL and CU policies and that no exclusion applies because the injuries were caused by J.L. They also argue for coverage under the PL policy because they say that the women's injuries occurred as a result of treatment decisions regarding J.L. While they do not dispute that the employer's liability exclusion in the CGL policy eliminates the duty to defend or indemnify Homes, which they identify as the employer,[1] they claim that this exclusion does not apply to the Corporation. They also do not dispute that the employer's liability exclusion in the PL policy eliminates the duty to defend Homes, but they claim that the exclusion does not apply to the Corporation and does not eliminate the duty to indemnify Homes.

On their cross-appeal, Homes and the Corporation argue that the district court erred by dismissing the case without granting summary judgment in their favor and without addressing the motions for summary judgment on their third party complaint against the Minnesota Worker's Compensation Board. After the case was dismissed, Homes and the Corporation entered into a stipulation to dismiss the third party action without prejudice and they wish to have the district court give effect to that stipulation on remand.

II.

An insurer's duty to defend an insured is contractual. See Meadowbrook, Inc. v. Tower Ins. Co., Inc., 559 N.W.2d 411, 415 (Minn. 1997) (citing Inland Constr. Corp. v. Continental Cas. Co., 258 N.W.2d 881, 883 (Minn. 1977)). The duty to

---

[1]The allegations in the complaint name both Homes and the Corporation as the employer.

defend is broader than the duty to indemnify and extends to every claim that arguably falls within the scope of the policy coverage. Id. (citations omitted). Coverage depends upon the allegations in the complaint, which must be compared with the relevant language in the policy, see Ross v. Briggs & Morgan, 540 N.W.2d 843, 847 (Minn. 1995), as the duty to defend exists regardless of the merit of the underlying claims. See Meadowbrook, Inc., 559 N.W.2d at 419 (citing Republic Vanguard Ins. Co. v. Buehl, 204 N.W.2d 426, 429 (Minn. 1973)) ("An insurer's obligation to defend its named insured does not depend on the merits of the claim asserted, but on whether the allegations of the *complaint* state a cause of action within the coverage afforded by the *policy*.") (emphasis in original). An insurer contesting its duty to defend bears the burden of showing that each claim asserted in the lawsuit "clearly falls outside" coverage under the policy. Meadowbrook, Inc., 559 N.W.2d at 418 (internal quotation marks and citation omitted). "Exclusions are to be strictly interpreted against the insurer and an insurer denying coverage because of an exclusion bears the burden of proof." Useldinger & Sons, Inc. v. Hangsleben, 505 N.W.2d 323, 327 (Minn. 1993). Our review is de novo. See St. Paul Fire & Marine Ins. Co. v. Schrum, 149 F.3d 878, 880 (8th Cir. 1998).

A.

The employee complaint alleges 'bodily injury' as defined under the CGL policy. That policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Appellants' App., 86. The complaint alleges attacks by J.L. resulting in loss of consciousness and a broken wrist, id. at 4, a back injury, id. at 5, and an attempted rape. Id. at 4. These allegations do not clearly fall outside the coverage for bodily injury under the policy, and the insurers' argument on this point must therefore be rejected. See Meadowbrook, Inc., 559 N.W.2d at 419.

The CGL policy limits coverage to "'bodily injury' . . . caused by an 'occurrence[.]'" Appellants' App., 77. "Occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 88. The Minnesota courts have so far declined to decide whether allegations of sexual harassment can satisfy the 'occurrence' requirement. See Meadowbrook, Inc., 559 N.W.2d at 419; see also St. Paul Fire & Marine Ins. Co. v. Seagate Technology, Inc., 570 N.W.2d 503, 507 (Minn. Ct. App. 1997). We need not address this undecided question of state law if a policy exclusion applies, so we move on to consider the exclusions.

The CGL policy's employer's liability exclusion bars coverage for "'bodily injury' to . . . an 'employee' of the Insured arising out of and in the course of . . . employment by the Insured . . . [or] performing duties related to the conduct of the Insured's business . . . whether the Insured may be liable as an employer or in any other capacity[.]" Appellants' App., 78. Homes and the Corporation do not dispute that this exclusion applies to Homes, but assert that it does not bar coverage for the Corporation because it was not the employer . This argument overlooks the fact that the complaint alleged that both Homes and the Corporation were liable as employers.

The duty to defend arises from the allegations within the complaint. See Meadowbrook, Inc., 559 N.W.2d at 420 (citing Ross v. Briggs & Morgan, 540 N.W.2d 843 (Minn. 1995)) ("In assessing whether an insurer has a duty to defend, the court must focus on the *claim* and whether its elements fit within the exclusion.") (emphasis in original). The employees' complaint identifies both Homes and the Corporation as their employer. See Appellant's App., 2-3. While the Corporation was insured under the CGL policy, the allegations in the complaint only addressed it as an employer. Within that role there was no coverage under the CGL policy because of the employer's liability exclusion. The insurers thus had no duty under the policy to defend or indemnify the Corporation in the underlying litigation. Because the employer's

-6-

liability exclusion eliminated coverage under this policy, the employment practices and workers compensation exclusions need not be addressed.

B.

The CU policy covers "those sums in excess of 'underlying insurance' . . . that the 'Insured' becomes legally obligated to pay as damages because of an 'injury' caused by an 'occurrence' to which this policy applies." Appellants' App., 157. Under this policy, 'injury' includes 'bodily injury,' as well as 'advertising injury,' 'personal injury,' and 'property damage.' Id. at 163. Because the language defining 'bodily injury' in the CU policy is identical to that in the CGL policy, the allegations in the Crist complaint do not clearly fall outside the scope of the policy, for the reasons already discussed. An "occurrence" under the CU policy is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 163. This language substantially mirrors that of the CGL policy and has not been construed in a Minnesota sexual harassment case.

The employment practices provision in the CU policy precludes coverage for the Crist allegations. The provision bars coverage for any injury "arising out of . . . refusal to employ . . . termination of employment . . . coercion, demotion, evaluation, reassignment, discipline, humiliation, discrimination or other employment-related practices, policies, acts or omissions[.]" Appellants' App., 158. The Crist complaint states seven claims that could have invoked the duty to defend:[2] sexual harassment, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring and supervision, whistle blower, and aiding and

---

[2]As noted above, only the sexual harassment claim survived on appeal. The duty to defend arises regardless of the merits of the claims, however, so long as the allegations do not clearly fall outside the coverage of the policy. See Meadowbrook, Inc., 559 N.W. 2d at 418.

abetting. Id. at 9-14. Each of these claims turns on employment practices. The complaint alleges that "[d]efendants created a hostile work environment . . . by allowing a working environment to exist [that] included unlawful sexual harassment [and] discrimination," id. at 9, that defendants made unwanted sexual conduct from J.L. "a condition of their employment," id. at 11, that the insureds' failure to "react[] and protect[] [employees] [was] extreme and outrageous[,]" id., that after the employees reported the assaults "[d]efendants failed to take timely and appropriate action . . . to protect [employees,]" id. at 12, that the insureds negligently hired supervisors who failed to take appropriate action in response to the employees' complaints, id. at 13, and that as a result of their complaints about their work environment the employees were "stripped of all authority . . . and . . . constructively discharged." Id. at 14. The first paragraph of the complaint states that "[t]his is an action . . . based on unlawful employment practices on the basis of sex[.]" Id. at 2. As we noted in Crist v. Focus Homes, Inc., 122 F.3d 1107, 1110 (8th Cir. 1997), "the thrust of [the employees'] lawsuit is Focus Homes' conduct in response to [the employees'] complaints about J.L.'s physically aggressive behavior, not J.L.'s underlying conduct."

The relatively few cases that have addressed employment practices exclusions in similar contexts have held in favor of the insurers. In Miller v. McClure, 742 A.2d 564 (N.J. App. Div. 1998) (per curiam), aff'd, 745 A.2d 1162 (N.J. 1999) (per curiam), an employment practices exclusion was held to bar coverage of a sexual harassment claim because it, like the one in this case, provided that coverage did not extend to "harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions[.]" Id. at 569; see also Frank and Freedus v. Allstate Ins. Co., 52 Cal. Rptr. 2d 678, 684 (Cal. Ct. App. 1996) (defamatory statement made in context of employment and directed to performance fell within employment practices exclusion). Compare HS Serv. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 646 (9th Cir. 1997) (employment practices exclusion did not apply where defamatory statement occurred outside employment context). See generally Joseph P. Monteleone & Emy Grotell, Coverage for Employment Practices Liability under Various Policies:

<u>Commercial General Liability, Homeowners', Umbrella, Worker's Compensation and Directors' and Officers' Liability Policies</u>, 21 W. New. Eng. L. Rev. 249 (1999).

The assertion by Homes and the Corporation that the employees sought relief primarily because of the failure to provide proper treatment for J.L. is not borne out by their complaint. The employees could have sued Homes and the Corporation under a number of theories. For example, they could have alleged that the employers had a duty to control J.L., that they had failed to do so, and that the employees had been injured as a result. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Minnesota</u>, 553 N.W.2d 40, 50 (Minn. 1996); <u>Lundgren v. Fultz</u>, 354 N.W.2d 25, 27 (Minn. 1984). They could also have alleged that Homes and the Corporation improperly medicated J.L. or negligently provided or failed to provide professional services to him. Nowhere in their complaint, however, did the employees make such claims. The complaint instead deals with the insureds' treatment of the plaintiffs as employees. The employment practices exclusion therefore precludes coverage for the claims, and the insurers had no duty to defend or indemnify the Homes or the Corporation under the CU policy.

C.

The PL policy covers "those sums that the Insured becomes legally obligated to pay as damages because of a professional error or mistake made . . . by you . . . arising out of the performance or failure to perform any professional services for others in your capacity as a residential care facility." Appellants' App., 110. The policy does not cover "'bodily injury' . . . resulting from other than a professional error or mistake acting in your capacity as a residential care facility" or bodily injury to "an employee of the Insured arising out of and in the course of employment by the Insured[.]" <u>Id.</u> at 110-111.

The <u>Crist</u> complaint did not allege injuries arising from professional malpractice, and the PL policy therefore does not cover the claims in the complaint. Moreover, the

employer's liability exclusion would bar coverage under the PL policy, as it did under the CGL policy, because the complaint alleged injuries that occurred in the course of employment.

## III.

After a thorough review of the record, we conclude that the insurers had no duty to defend or indemnify Homes or the Corporation under any of the three policies. The insurers are therefore entitled to judgment in their favor, and the stipulation for dismissal of the third party action may be presented to the district court on remand. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS,  EIGHTH CIRCUIT.