Milton ZAIONTZ, Patti Zaiontz, and Michael C. Gershonsen, Appellants and Cross–Appellees,

v.

TRINITY UNIVERSAL INSURANCE CO. and Texas Pacific Indemnity Company, Appellees and Cross–Appellants.

No. 04–01–00329–CV.

Court of Appeals of Texas, San Antonio.

April 30, 2002.

Opinion On Rehearing July 17, 2002.

Michael A. Chovanec, Germantown, TN, Terry M. Levine, Tom Clarke, San Antonio, for appellants.

George B. Hall, Jr., Phelps Dunbar, L.L.P., New Orleans, LA, Joseph A. Ziemianski, Bryan Vezey, Kathleen Hopkins Alsina, Phelps Dunbar, L.L.P., Houston, Gerald L. Shiely, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellees.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: SARAH B. DUNCAN, Justice.

The issue in this appeal is whether Bio Zapp, Inc.'s insurers must indemnify Bio Zapp's president, Michael Gershonsen, for a judgment against him and in favor of another Bio Zapp employee, Milton Zaiontz, and his wife Patti. We hold coverage is precluded and affirm the trial court's summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Bio Zapp Laboratories and its president and majority shareholder, Michael Gershonsen, obtained a primary commercial general liability policy from Trinity Universal Insurance Co. ("Trinity") and a commercial excess/umbrella policy from Texas Pacific Indemnity Company ("TexPac"). While these policies were in effect, another Bio Zapp employee, Milton Zaiontz, was injured in the course and scope of his employment while spraying Bio Zapp's "Smoke and Fire Odor Eliminator" in the interior of a smoke-damaged airplane. Because Bio Zapp was a nonsubscriber of workers' compensation insurance, Zaiontz and his wife Patti filed suit against Bio Zapp and Gershonsen. Zaiontz alleged his injuries were proximately caused by Gershonsen's negligence in preparing the "Material Safety Data Sheet" that Zaiontz relied upon in using the Smoke and Fire Odor Eliminator. A jury agreed; and Zaiontz recovered a judgment in excess of one million dollars against Gershonsen and, based on a stipulation that Gershonsen was at all times acting within the course and scope of his employment with Bio Zapp, also against Bio Zapp.

Zaiontz did not attempt to collect the judgment from either Bio Zapp or Gershonsen. Instead, Zaiontz filed suit to collect the judgment from Trinity and Tex-

Pac, both of which had denied coverage and refused to defend the suit. Gershonsen intervened seeking indemnity. The insurers moved for summary judgment on three grounds: "(1) the subject insurance policies exclude coverage for any injury to an employee of the insured arising out of and in the course of employment by the insured; (2) the subject insurance policies exclude coverage arising out of pollution; and (3) [Gershonsen] is not an 'insured' under the policies." The trial court denied the insurers' summary judgment on the last two grounds but granted it on the first ground. The Zaiontzes and Gershonsen appealed. The insurers cross-appealed the denial of their motion on the last two grounds.

### STANDARD OF REVIEW

■■■ We review a summary judgment de novo. *Valores Corporativos, S.A. de C.V. v. McLane Co.,* 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied). Accordingly, we will uphold a traditional summary judgment only if the summary judgment record establishes the absence of a genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *Id.;* TEX.R. CIV. P. 166a(c). In deciding whether the summary judgment record raises a genuine issue of material fact, we "view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor." *Valores,* 945 S.W.2d at 162. When the trial court specifies the ground for its ruling, we should consider that ground. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996). In the interest of judicial economy, we also consider grounds the trial court did not consider or denied. *Id.*

### EMPLOYEE EXCLUSION

■■■ Because it is undisputed that Zaiontz was Bio Zapp's employee, his personal injuries arose out of the course and scope of his employment; and his wife's injuries, assuming for purposes of discussion they constitute "bodily injury" under the policy, arose as a consequence of her husband's; the insurers contend the employee exclusion applies and excludes coverage. The employee exclusion in Trinity's policy provides:

2. Exclusions:

This insurance does not apply to:

. . . .

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse ... of that employee as a consequence of (1) above.[1]

In response, Zaiontz argues that because the policy contains a "Separation of Insureds" clause, "the employee exclusion applies *only* if the insured who is actually seeking coverage under the policy is the injured claimant's employer."[2] *See Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714 (Tex.1970). Therefore, Zaiontz argues, since Gershonsen is the insured who is actually seeking coverage, and Zaiontz was not his employ-

---

1. The employee exclusion in TexPac's policy is virtually identical.

2. The "Separation of Insureds" clause in Trinity's policy provides:

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
a. As if each Named Insured were the only Named Insured; and
b. Separately to each insured against whom claim is made or "suit" is brought.
Again, the Separation of Insureds clause in the TexPac policy is virtually identical.

ee, the employee exclusion does not apply. We agree.

In *Commercial Standard*, the supreme court was asked to decide whether an employee exclusion clause in an automobile liability policy issued by American General to Harris Concrete Co. excluded coverage for the personal injury claims advanced by three employees of the general contractor against three additional insureds under Harris Concrete's policy. *See id.* at 715. The policy excluded coverage for bodily injury to any employee of "the insured" arising out of and in the course of employment by "the insured." *See id.* at 718. However, the policy further provided in the "Severability of Interests" clause that "[t]he term 'the insured' is used severally and not collectively." *Id.* The court held:

> [T]he term 'the insured' as used in this policy must be examined by first applying the 'severability of interests' test. 'The insured' does not refer to all insureds; rather, the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder. When a claim is made against one who is an 'insured' under the policy, the latter is 'the insured,' for the purpose of determining the company's obligations with respect to such claim.

*Id.* at 721. The insurers argue *Commercial Standard* must be distinguished on its facts because there, unlike here, "[t]he general contractor and the subcontractor were completely separate entities" and because there, unlike here, the result was consistent with workers' compensation law, which permits an employee who has recovered workers' compensation benefits to sue a third party tortfeasor. We disagree. Nothing in the court's holding indicates it is so limited.

The insurers also argue that because Zaiontz's petition in the suit against Bio Zapp and Gershonsen treats both Bio Zapp and Gershonsen as Zaiontz's employer, "Gershonsen as well as Bio Zapp must be subject to the employer liability exclusion of the insurance policies." In support of their argument, the insurers cite *Agricultural Ins. Co. v. Focus Homes, Inc.*, 212 F.3d 407 (8th Cir.2000) (applying Minnesota law). In *Focus Homes*, three employees sued Focus Homes, Inc. and Focus Homes Corporation for personal injuries received during the course and scope of their employment. *Id.* at 408. The policy excluded coverage for " 'bodily injury' to . . . an 'employee' of the Insured arising out of and in the course of . . . employment by the Insured . . . [or] performing duties related to the conduct of the Insured's business . . . whether the Insured may be liable as an employer or in any other capacity." *Id.* at 410–11. Focus Homes, Inc. and Focus Homes Corporation conceded this exclusion applied and excluded coverage of the claims made against Focus Homes, Inc. because it was the employer. *Id.* at 411. But they argued it did not apply to Focus Homes Corporation because it was not the employer. *Id.* The court disagreed. *Id.* Reasoning that the duty to defend is broader than the duty to indemnity and, further, that "[t]he duty to defend arises from the allegations within the complaint," the court held that the employees' allegations against Focus Homes Corporation, because they addressed its liability only as an employer, did not give rise to a duty to defend or indemnify. *Id.*

In response, Zaiontz argues the underlying case, unlike that in *Focus Homes*, did not allege Gershonsen was his employer. We agree. Although Zaiontz's petition contains the confusing statement that because "Defendants are non-subscribers to workers's [sic] compensation coverage, De-

fendants are statutorily prohibited from asserting "[common law] defenses," it also unequivocally states "[a]t all times mentioned herein, Plaintiff MILTON ZAIONTZ was employed by Defendant, BIO ZAPP LABORATORIES, INC." We therefore decline to apply the holding in *Focus Homes* in this case.

Because the Trinity and TexPac policies contain separation of insureds clauses, the employee exclusion in neither policy excludes coverage of the suit against Gershonsen. We therefore hold the trial court erred in granting the insurers' motions for summary judgment on the ground that coverage was excluded by the employee exclusions. We must therefore turn to the insurers' cross-appeal.

#### TRINITY

■ Trinity argues that Gershonsen was not an insured for purposes of the Zaiontz suit under the Trinity policy. We agree.

The Trinity policy provides:

**SECTION II—WHO IS AN INSURED**

. . . .

1. If you are designated in the Declarations as:

. . . .

    c. An organization other than a partnership or joint venture, you are an insured. **Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.** Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. *However, no employee is an insured for:*

    (1) *"Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse,* child, parent, brother or sister *of that co-employee as a consequence of such "bodily injury" or "personal injury,"* or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

In response, Zaiontz argues a proper or at least reasonable construction of the italicized sentence excludes executive officers such as Gershonsen, because the sentence is located in the section dealing with "employees other than executive officers." We disagree.

Insurance policies are subject to the same rules of construction as other contracts. *See Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997). Accordingly, "the plain, ordinary, and generally accepted meaning of words is preferred unless the policy itself shows that the terms have been used in a technical or different sense." *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 346 (Tex.1976).

In its generally accepted meaning, "employee" refers to "one who works for another." MERRIAM WEBSTER DICTIONARY 250 (1994). In accordance with this definition, an executive officer who works for a corporation is generally understood to be an employee of that corporation. That the Trinity policy employs this generally excepted definition is evident in the first sentence of section II.2.a, which excepts a subset of employees—"executive officers"—from the broader set of "your employees" in extending insured status to employees acting within the scope of their

employment. This exception would have been unnecessary if, as Zaiontz argues, the policy used "employee" to mean only those employees who were not executive officers. Additionally, if the second sentence in section II.2.a.(1) had been intended to deny insured status only to employees who were not executive officers, it would have used the phrase "these employees," not "no employee." *See Martin v. United States Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. 1999).

We hold the phrase "no employee" must be interpreted to mean "no employee"—whether or not the employee is an executive officer. *Cf. Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 86 (5th Cir.), *cert. denied*, 522 U.S. 818, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997). Accordingly, Gershonsen was not an insured under the Trinity policy for purposes of the Zaiontz suit. We therefore affirm the trial court's summary judgment in favor of Trinity.

### TexPac—Coverage A or Coverage B?

The TexPac commercial umbrella policy consists of two parts—an excess "following form"[3] liability policy (Coverage A), which "adds excess limits over scheduled underlying coverages," and an umbrella liability policy (Coverage B), which "adds a broadening measure of coverage against many of the gaps in and between the underlying coverages."[4] Coverage A expressly excludes from coverage "any liability excluded by underlying insurance." As Zaiontz recognizes, TexPac has no duty to indemnify under Coverage A because Trinity's policy—the underlying insurance—excludes liability for Gershonsen's bodily injury to a co-employee.

Unlike Coverage A, however, Coverage B does not exclude from coverage "any liability excluded by underlying insurance." Zaiontz thus argues that the judgment against Gershonsen is covered by Coverage B of the TexPac policy. TexPac argues Coverage B does not apply to Zaiontz's suit, because the policy provides: "Coverage B will not apply to any loss, claim or suit for which insurance is **afforded** under underlying insurance...." According to TexPac, Coverage B "does *not* apply where insurance is *afforded*, regardless of whether an exclusion applies," because "[t]here is a difference between the phrase 'for which there is no coverage under underlying insurance' and the phrase 'for which insurance is *afforded* under underlying insurance.'" TexPac thus appears to argue that Coverage B does not apply because coverage for bodily injury is "afforded" under the Trinity policy even though coverage Zaiontz's bodily injury is excluded by the co-employee provision. In support of its argument, TexPac cites no case law and a single article—Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues*, 24 Tort & Ins. L.J. 715, 726 (1989). We are unable to glean from the policy the distinction TexPac seeks to draw. Nor has our review of Mr. Marick's article revealed any support for TexPac's argument. Under these circumstances, we decline to adopt TexPac's construction of the provision and instead hold Coverage B applies unless coverage is excluded. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997) ("if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will

---

**3.** *See generally* Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues*, 24 Tort & Ins. L.J. 715, 718 (1989).

**4.** *See id.* at 718–19.

be adopted."). We therefore turn to the remaining exclusion urged by TexPac—the pollution exclusion.

### TexPac's Pollution Exclusion

Coverage B of the TexPac policy excludes liability for:

1. any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or

. . . .

As used in this exclusion, **pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

This exclusion applies whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

TexPac argues liability for Zaiontz's injuries are excluded under the plain language of paragraph 1 of the pollution exclusion, because the injuries—and consequent liability—arose from "the actual ... dispersal ... of [a] pollutant[]," *i.e.*, the Smoke and Fire Odor Eliminator. We agree and so hold.

### *Latent Ambiguity*

Zaiontz argues the trial court erred in granting summary judgment because the policies contain a latent ambiguity regarding whether the pollution exclusion applies. We disagree.

Faced with a similar argument in the context of a virtually identical absolute pollution exclusion, the supreme court stated:

An ambiguity in a contract may be said to be "patent" or "latent." A patent ambiguity is evident on the face of the contract. A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement.

. . . .

If the contract language is not fairly susceptible of more than one legal meaning or construction, ..., extrinsic evidence is inadmissible to contradict or vary the meaning of the explicit language of the parties' written agreement.

*National Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520–21 (Tex.1995) (citations omitted). In *National Union*, CBI's insurers moved for summary judgment, contending absolute pollution clauses excluded coverage of claims arising out of a large cloud of hydrofluoric acid that was released over Texas City following a workplace accident. *Id.* at 519. The court agreed, holding:

On its face, the language of the policies is clear and not patently ambiguous. Nor are the policies latently ambiguous. Applying the policies' language to the context of the claim here does not produce an uncertain or ambiguous result, but leads only to one reasonable conclusion: the loss was caused by a cloud of hydrofluoric acid, a substance which is clearly a "pollutant" for which coverage is precluded.

*Id.* at 521. The same is true here, as discussed below. We therefore hold the absolute pollution exclusion in TexPac's Coverage B is not latently ambiguous.

### *"Discharge, Release, Dispersal"*

■ Zaiontz argues his injuries did not arise from the "discharge, dispersal, seep-

age, migration, release or escape" of the Smoke and Fire Odor Eliminator, because the substance did not leave the location of its placement—the interior of the smoke-damaged airplane. In support of his argument, Zaiontz cites *Union Pacific Res. Co. v. Aetna Cas. & Sur. Co.*, 894 S.W.2d 401, 403 (Tex.App.-Fort Worth 1994, writ denied). We disagree.

At issue in *Union Pacific* was whether Union Pacific's liability policies covered clean up costs Union Pacific was required to pay as a result of the migration of the waste it deposited in an industrial landfill into neighboring land and groundwater. *Id.* at 403. The insurers moved for summary judgment, arguing their liability for the claim was excluded by one of two types of pollution exclusions. *Id.* The "sudden and accidental" exclusion "exclude[d] liability for property damage arising out of the discharge, dispersal, release, or escape of waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any water course or body of water, but this exclusion [did] not apply if such discharge, dispersal, release or escape [was] sudden and accidental." *Id.* The "sudden, unintended and unexpected" exclusion "exclude[d] liability for property damage directly or indirectly caused by seepage, pollution, or contamination, provided the exclusion [did] not apply to liability for property damage where the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening." *Id.* All of the policies defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." *Id.*

The trial court granted summary judgment, concluding that Union Pacific's claim did not arise out of an "occurrence," as defined by the policies, because the dumping of waste at the landfill was intentional. *Id.* The court of appeals reversed, holding "where material has been deposited in a place which was believed to serve as a landfill for such waste, the polluting 'occurrence' is the 'discharge, dispersal, release, or escape' or 'seepage, pollution or contamination' of toxic material into the environment." *Id.* at 404. In support of its holding, the court stated:

The phrase "seepage, pollution or contamination" in the "sudden, unintended or unexpected" exclusions and the phrase "discharge, dispersal, release or escape" in the "sudden and accidental" exclusions do not encompass the *disposal* of wastes. All of these terms connote the substance leaving the location of placement. None of these terms is normally used to describe the placement of a substance into an area.

*Id.* From this, Zaiontz concludes that, since the Coverage B pollution exclusion contains the similar phrase "discharge, dispersal, seepage, migration, release, or escape," it does not apply because the Smoke and Fire Eliminator was not "moved from the intended location into which it was *placed*, the cabin where the injury occurred." We disagree.

Unlike the *Union Pacific* court, we are not confronted with either a "sudden and accidental" or a "sudden, unintended and unexpected" pollution exclusion; nor are we asked to determine whether the disposal of waste constitutes an "occurrence." Instead, we are asked to interpret an "absolute pollution exclusion"[5] and thus to determine whether Zaiontz's injuries arose

5. *National Union,* 907 S.W.2d at 522 (" 'This pollution exclusion is just what it purports to be—absolute....' ") (quoting *Alcolac Inc. v.*  *California Union Ins. Co.,* 716 F.Supp. 1546, 1549 (D.Md.1989)).

out the "discharge, dispersal, seepage, migration, release or escape" of a pollutant. To do so we must use "[t]he plain, ordinary, and generally accepted meaning of words ... unless the policy itself shows that the terms have been used in a technical or different sense." *Castaneda,* 988 S.W.2d at 210.

To "discharge" a pollutant means to emit it. MERRIAM WEBSTER DICTIONARY 220 (1994). To "disperse" a pollutant means to break it up and scatter it about. *Id.* at 223. To "release" a pollutant means to set it free from confinement. *Id.* at 618. Any of these verbs is the functional equivalent of "spray"—to "scatter or let fall in a spray." *Id.* at 699. Accordingly, by alleging that he was injured when he used foggers to "spray" the Smoke and Odor Eliminator into the interior of the plane, Zaiontz alleged he was injured by the "discharge," "dispersal," or "release" of the Smoke and Odor Eliminator from the fogger into the interior of the plane.

### *"Pollutant"*

■ Zaiontz next argues the pollution exclusion "does not apply until the substance has moved from an area which it does not pollute into an area which it does pollute." In support of this argument, Zaiontz relies upon *Clarendon Am. Ins. Co. v. Bay, Inc.,* 10 F.Supp. 2nd 736 (S.D.Tex.1998), in which the trial court ruled that the pollution exclusion there involved did not apply to the plaintiffs' claims arising out of contact between their skin and wet cement and concrete if the contact occurred "while the cement and its ingredients were in the cement's intended container or location," because in that case the "resulting injuries did not stem from the 'discharge, dispersal, seepage, migration, release or escape of the pollutants.'" *Id.* at 744. This fact distinguishes *Clarendon* from this case. Unlike the "contact"

plaintiffs in *Clarendon,* Zaiontz alleged his injuries stemmed from spraying the Smoke and Fire Odor Eliminator.

Zaiontz also argues that "the pollution exclusion can only apply when the potential pollutant substance has entered an area where it can be seen as some type of actual pollution"; and "the 'discharge, release, dispersal' must occur from a location at which the substance was not a 'pollutant' into an environment or location where it becomes a pollutant." We again disagree.

The plain language of the exclusion defines "pollutant" as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste"; and nothing in the policy indicates we are to give these words other than their ordinary meanings. Under this definition, the fumes from the Smoke and Fire Eliminator are a "pollutant." "Whether the policy definition comports with this court's [or Zaiontz's] notion of the usual meaning of 'pollutants' is not the issue." *American States Ins. Co. v. Nethery,* 79 F.3d 473, 475–76 (5th Cir. 1996) (holding pollution exclusion applied to paint and glue fumes, even though they do not usually inflict injury); *see also id.* at 477–78 (noting that "numerous courts have found substances constituted pollutants regardless of their ordinariness or usefulness").

In the context of these arguments, Zaiontz urges us to adopt a "common sense approach" to the pollution exclusion because "when read literally it excludes coverage in many unintended situations." *See, e.g., Certain Underwriters at Lloyd's, London v. C.A. Turner Constr. Co.,* 112 F.3d 184 (5th Cir.1997). But we believe that option is foreclosed by the supreme court's holding in *National Union* that a virtually identical absolute pollution exclusion was not patently ambiguous or latent-

ly ambiguous in the context of the claim; under these circumstances, we must apply the literal language of the exclusion. *See National Union,* 907 S.W.2d at 521.

### CONCLUSION

Because the Trinity policy denies insured status to an employee who injures another employee while in the course and scope of his employment, we affirm the trial court's summary judgment in Trinity's favor. It is undisputed that Gershonsen was Bio Zapp's employee; and he injured a co-employee, Zaiontz, while in the course and scope of his employment. We also affirm the summary judgment in TexPac's favor. The unambiguous absolute pollution exclusion precludes coverage.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

In their motions for rehearing, Gershonsen and Milton and Patti Zaiontz ask that we remand this cause to the trial court for consideration of their "cause of action" to reform the TexPac pollution exclusion, which was dismissed as moot by the trial court after it granted summary judgment on other grounds. We decline the request for a remand. Because they are not parties to the TexPac insurance contract, Gershonsen and the Zaiontzes do not have standing to seek reformation. *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank,* 678 S.W.2d 574, 577 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("Even a person with a substantial interest in the contract may not maintain an action for reformation if he is not a party or privy thereto.") (citing *Sims v. Haggard,* 162 Tex. 307, 346 S.W.2d 110 (1961)).